# EXHIBIT "A"

## Ellen McDowell

| | |
|---|---|
| **From:** | Ellen McDowell |
| **Sent:** | Friday, April 24, 2020 3:54 PM |
| **To:** | 'Sandoval, Alicia' |
| **Subject:** | Princeton Avenue Group |
| **Attachments:** | interrogatory answers for service.pdf; DEBTOR'S RESPONSE TO RFP.pdf; final doc production.pdf |

Alicia, here are my client's responses to your clients' discovery requests.

**Ellen M. McDowell, Esq.** │ *Managing Shareholder*



**46 West Main Street**
**Maple Shade, NJ 08052**
**Phone: (856) 482-5544**
**Fax: (856) 482-5511**
**www.mcdowelllegal.com**

This email message may be a privileged and confidential attorney-client communication that is intended only for the use of the person, firm or entity to whom or to which it is directed. If you are not an intended recipient of this message, please understand that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this message in error or are not a named recipient(s), please immediately notify us at (856) 482- 5544 and delete this e-mail message from your computer.  Thank you.

If this email message is directed to one of our clients, it is deemed to be an attorney-client communication which is privileged under both federal and state law. However, if you disclose the content of this message to a third person, such as by forwarding it via email, you may be waiving the attorney-client privilege, not only as to this message, but as to all of our communications. If you have any questions about disclosing this message to third persons, please contact us immediately.

DEPT. OF TREASURY CIRCULAR 230 DISCLOSURE:  No written statement to be provided by McDowell Law, PC relating to any Federal tax transaction or matter is intended to be used, and no such statement can be used by the taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer.  Such written statement is further not intended to be used and may not be used by any person to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s).  Any tax advice contained in this communication, including any attachments, should not be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement, nor is such advice intended or written to be used, and cannot be used, by a taxpayer for the purpose of avoiding penalties under the Internal Revenue Code.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

**Ellen M. McDowell, Esq.**
**McDowell Law, PC**
**46 West Main St.**
**Maple Shade, NJ 08052**
**(856) 482-5544**
**(856) 482-5511**
**emcdowell@mcdowelllegal.com**

------------------------------------------------------X
                                           :     **Chapter 11**

**In re:**                                    :

                                         :     **Case No. 19-19841**

        **Princeton Avenue Group, Inc.**   :

                                         :     **Hon. Jerrold N. Poslusny, Jr.**

                    **Debtor**         :
------------------------------------------------------X

## DEBTOR'S RESPONSES TO INTERROGATORIES

## **INTERROGATORIES**

1.      Identify the person or persons providing the information in response to these Interrogatories, including therewith their names, addresses and telephone numbers, as well as a description of the person's relationship with any other party in this case.

    **RESPONSE:**           Konstantinos Tzitizfas
                            12 S. Princeton Ave.
                            Wenonah, NJ
                            President of the Debtor
                            Former friend of Pero
                            and Swersky

2.      Identify, by name, address, and telephone numbers, all persons or entities who have knowledge of any information concerning this Dispute, including, but not limited to, the secured and unsecured debts of the Debtor, the Debtor's payments of its loan obligations and real estate taxes, valuations or appraisals of the Property, the occupants and/or tenants of the Property since January 1, 2008.  For each such person or entities, set forth their areas of knowledge.

    **RESPONSE:**           Konstantinos Tzitzifas - all of the above
                            Jill Swersky - information concerning her claim
                            Arlene Pero - information concerning her claim

3.      State whether you claim that any party has made any admission with regard to the subject matter of this Dispute. If yes, state with respect to each such admission:

      a.    the date thereof;

      b.    by whom made;

      c.    to whom made;

      d.    where made;

      e.    the name and address of each person present at the time same was made;

      f.    a verbatim recitation thereof. Attach hereto any written statements which you allege are admissions by said party.

**RESPONSE:**     None known as of this date.  Debtor reserves the right to amend this answer at a later date if admissions are discovered.

4.     Describe any and all communications you or your agents, representatives, or employees had with any of the current or former shareholders of PAG, including but not limited to Pero and/or Swersky, regarding acquisition of the Property, including but not limited to financing, financial or operational projections, and/or maintenance of the Property.  Include in your descriptions the dates and times of each communication, the name and address of each person present for each communication, and the contents of said communications, attaching any documents supporting your answer.

**RESPONSE:**     Answering party cannot recall the dates and times of the many communications with current or former shareholders of PAG relating to the acquisition of the Property.  Answering party will state, however, that Pero and Swersky were warned that it was likely they would suffer a loss if they invested in the Property and restaurant entities or loaned any funds.  Additionally, Pero and Swersky repeatedly told Mr. Tzitzifas not to worry about repaying the debt as they were "like family."

5.     Describe any and all communications you or your agents, representatives, or employees had with any of the current or former shareholders of PAG, including but not limited to Pero and/or Swersky, regarding indebtedness secured by the Property, including but not limited to loan applications, financial or operational projections, and/or repayment of the indebtedness.  Include in your descriptions the dates and times of each communication, the name and address of each person present for each communication, and the contents of said communications, attaching any documents supporting your answer.

**RESPONSE:**     See response to Interrogatory 4.

6.     Identify, by name, address, and telephone number, all persons or entities who received financial compensation from PAG for services provided, including but not limited to employees, independent contractors, and/or entities providing professional services from January 1, 2008 through the Petition Date.  Include in your answer a description of the services provided, the time period over which PAG paid said compensation, and the form of payment.

**RESPONSE:**     Objection.  This Interrogatory is overbroad and unduly burdensome and seeks information that is not irrelevant and not reasonably calculated to lead to admissible evidence.  Without waiving this objection, no person received financial compensation from PAG at any time for services provided.

OMC\4847-8696-8249.v1-4/3/20

7.      Identify, by name, address, and account number, all financial institutions with whom PAG held a depository, checking, or credit line account from January 1, 2008 to the Petition Date.

**RESPONSE:**        Objection.  This Interrogatory is overbroad and unduly burdensome and seeks information that is not irrelevant and not reasonably calculated to lead to admissible evidence.  Without waiving this objection, PAG has used TD Bank and Liberty Bell Bank for banking.

8.      Describe any and all communications you, your current and former agents, representatives, employees, including but not limited to Gus, had with Pero and/or Swersky regarding the Pero Note from January 1, 2008 through the present, including but not limited to disbursement of loan proceeds, negotiation of terms, and/or repayment.  For each such communication, set forth the date, person(s) present, the form of communication (e.g., in-person, email, text message, phone), and the subject of the communication.

**RESPONSE:**        Answering party cannot recall the dates and times of the many communications with Pero and Swersky relating to the Pero Note. Answering party will state, however, that Pero and Swersky were warned that it was likely they would suffer a loss if they invested in the Property and restaurant entities or loaned money.  Additionally, Swersky and Pero told Mr. Tzitzifas on multiple occasions not to worry about repaying the debt as they were "like family."

9.      Set forth all facts supporting your contention in the Pero Objection that PAG made two (2) payments on the Pero Note, including the dates of each payment, the form(s) of payment, and the bank account(s) from which each such payment was made, attaching all documentation supporting your answer.

**RESPONSE:**        See cancelled checks provided in response to Request for Production of Documents.

10.     Describe any and all communications you, your current and former agents, representatives, employees, including but not limited to Gus, had with Pero and/or Swersky regarding the Swersky Note and Swersky Mortgage from January 1, 2008 through the present,

OMC\4847-8696-8249.v1-4/3/20

including but not limited to disbursement of loan proceeds, negotiation of terms, and/or repayment. For each such communication, set forth the date, person(s) present, the form of communication (e.g., in-person, email, text message, phone), and the subject of the communication.

> **RESPONSE:** Answering party cannot recall the dates and times of the many communications with Pero and Swersky relating to the Swersky Note and Mortgage. Answering party will state, however, that Pero and Swersky were warned that it was likely they would suffer a loss if they invested in the Property and restaurant entities or loaned money. Addtionally, Swersky and Pero told Mr. Tzitzifas on multiple occasions not to worry about repaying the debt as they were "like family."

11.    Set forth all facts supporting your contention in paragraph ten (10) of the Swersky Objection that the Debtor made payments toward the balance due that are not reflected in the calculation of amount due in the Swersky Claim, including the date(s) of each such payment, the form(s) of payment, and the bank account(s) from which each such payment was made, attaching all documentation supporting your answer.

> **RESPONSE:** None.

12.    Describe any and all communications you, your current and former agents, representatives, employees, including but not limited to Gus, had with the current or former shareholders of PAG regarding unpaid real estate taxes or utilities owed to the Borough of Swedesboro since acquisition of the Property on August 17, 2011, the issuance of Tax Sale Certificate No. 15-00005 (the "Tax Lien"), the Lien Redemption Worksheet of which is attached to the Swersky Objection as Exhibit "D," and efforts to redeem the Tax Lien. For each such communication, identify the person(s) present, the form of communication, and the subject of each such communication.

> **RESPONSE:** Gus discussed the unpaid real estate taxes and utilities along with the ensuing tax lien certificate with all of the shareholders of PAG on numerous occasions. He specifically advised all shareholders that PAG was unable to pay the taxes.

13.    Identify, by name, last known address, and last known telephone number of each and every occupant or tenant of the Property from January 1, 2008 to the present, the nature of the relationship between PAG and each such occupant or tenant (e.g., landlord-tenant), the dates

OMC\4847-8696-8249.v1-4/3/20

and terms of each such occupancy, and if any tenant or occupant operated under a fictitious name, set forth each such name.

**RESPONSE:**    Tavro 13, Inc. was the only tenant/occupant during PAG's ownership of the Property.  Swersky and Pero agreed to rent the apartment above the restaurant from PAG and began renovating it only to abandon the renovations and leave it in state of complete disrepair resulting in PAG unable to rent it to any paying tenant.  This has caused PAG significant financial harm.

14.    Set forth each and every appraisal, broker's price opinion, or other valuation of the Property completed from January 1, 2008, to the present, including the identity of the appraiser or person or entity conducting the valuation, the purpose for conduction such appraisal or valuation, and the fair market value of the Property at the time of each such valuation, attaching all documentation supporting your answer.

**RESPONSE:**    The Debtor has no way of knowing every appraisal, broker's price opinion or other valuation of the Property that has been prepared for the Property since January 1, 2008.  The Debtor is in possession of just one appraisal - the one commissioned by Liberty Bell Bank, a copy of which is attached in response to Request for Production of Documents.

15.    Provide the following information for any and all proposed expert witnesses that You expect to call or rely upon and any experts appointed pursuant to Federal Rule of Evidence 706, whether or not such expert is expected to testify:

  a.    the name and address of the proposed expert witness;

  b.    the specific area of expertise of each proposed expert;

  c.    attach hereto a copy of a current curriculum vitae or resume for each proposed expert witness;

  d.    attach hereto a copy of the report of each expert set forth above along with a complete summary of any oral report.

**RESPONSE:**    None retained as of this date.  Debtor reserves the right to supplement this answer at a later date if  appropriate.

OMC\4847-8696-8249.v1-4/3/20

16.      Identify by name, address, and telephone number all witnesses you expect to call to testify at any evidentiary hearing on this Dispute.

**RESPONSE:**      Debtor has not yet determined what witnesses it will call at the evidentiary hearing.  This answer will be supplemented at the appropriate time.

15

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**Ellen M. McDowell, Esq.**
**McDowell Law, PC**
**46 West Main St.**
**Maple Shade, NJ 08052**
**(856) 482-5544**
**(856) 482-5511**
**emcdowell@mcdowelllegal.com**

---------------------------------------------------X
                                         :       **Chapter 11**

**In re:**                         :

                                       :       **Case No. 19-19841**

        **Princeton Avenue Group, Inc.**    :

                                       :       **Hon. Jerrold N. Poslusny, Jr.**

              **Debtor**        :
---------------------------------------------------X

### DEBTOR'S RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

      1.      Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

      2.      See attached.

      3.      See attached.

      4.      Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

      5.      Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

      6.      Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

      7.      Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

      8.      Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

      9.      See attached.

10.    See attached.

11.    None.

12.    See attached.

13.    None.

14.    None.

15.    See attached.

16.    None.

17.    Objection.  This Request is overly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence.

18.    See attached.

19.    None.

20.    See attached.

21.    See attached.

22.    See attached.

23.    See attached.

24.    None as of this date.

25.    None as of this date.

26.    None.

27.    None determined as of this date.  Debtor reserves the right to supplement this response at the appropriate time.


Dated:  April 21, 2020                    */s/ Ellen M. McDowell*
                                          Ellen M. McDowell
                                          Attorney for the Debtor

Subj:     **Fw: TAVRO13 INC. & PRINCETON AVENUE GROUP INC.**
Date:     8/2/2011 3:19:08 P.M. Eastern Daylight Time
From:     tavro13gus@aol.com
To:       lgclegal@aol.com

Sent via BlackBerry by AT&T

---

**From:** jillsworldhere@yahoo.com
**Date:** Wed, 20 Jul 2011 19:27:50 +0000
**To:** <tavro13gus@aol.com>
**ReplyTo:** jillsworldhere@yahoo.com
**Subject:** Re: TAVRO13 INC. & PRINCETON AVENUE GROUP INC.

Ok great news thanks Gus very exciting now

Sent from my Verizon Wireless BlackBerry

---

**From:** tavro13gus@aol.com
**Date:** Wed, 20 Jul 2011 13:05:48 -0400 (EDT)
**To:** <zoistzitzifas@aol.com>; <S.HARBAUGH@COMCAST.NET>; <bryan@perfecttouchlandscape.com>;
<jillsworldhere@yahoo.com>; <jesarp@yahoo.com>; <effie67@aol.com>; <tzitzifas@aol.com>
**Subject:** TAVRO13 INC. & PRINCETON AVENUE GROUP INC.

Re: Stock purchase of TAVRO13 INC. & PRINCETON AVENUE GROUP INC.

Dear Shareholders:

  I am pleased to inform you that on July 18, 2011, the liquor license transfer from the Sweedes Inn to Tavro13 Inc.was approved. Also, this week I received the banks appraisal for the Swedes Inn. The Appraisal value is $1,300,000.00 excluding the liquor license. We are therefore preparing for closing which I am anticipating for the first week in August. In preparation , it is necessary to receive your contribution for your ten percent (10%) interest in the two companies, Tavro13 Inc. & Princeton Avenue Group Inc., at this. Please forward your contribution of $125,000.00 by check payable to "Princeton Avenue Group Inc." to me at 12 s. Princeton Ave. Wenonah NJ 08090 by July 29, 2011.

  Once again, I must remind you of the substantial risks and uncertainties in operating a restaurant/bar business. There is no guarantee that your investment will be profitable or that you will receive a return in your investment. In fact, it has been reported by the I.R.S. that 9 out of 10 new restaurants fail in the first year. Therefore, there is a strong likelihood that this business venture could fail and we would lose our investment.

  Under the circumstances, if you have any doubts or concerns knowing the serious and substantial risks involved, I will certainly understand if you do not wish to proceed with this venture. Most importantly, your must understand that there are risks and no guarantees of success!

  I will be issuing stock certificates and executing a shareholders agreement in further preparation for the closing.


Regards,

Gus Tzitzifas, President
TAVRO13 INC.
PRINCETON AVENUE GROUP INC.



| 09/18/2012 | 1245 | $5,650.00 |
| 09/05/2012 | 1259 | $1,000.00 |
| 09/07/2012 | 1260 | $2,534.55 |
| 09/04/2012 | 1262 | $4,900.00 |
| 09/05/2012 | 1266 | $100.00 |
| 09/04/2012 | 1267 | $500.00 |
| 09/04/2012 | 1268 | $4,700.00 |
| 09/05/2012 | 1269 | $3,085.82 |
| 09/04/2012 | 1270 | $1,000.00 |
| 09/04/2012 | 1271 | $1,200.00 |



| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001307 |
| DATE 9/20/12 | | |
| PAY TO THE ORDER OF American Express | $ 9000.00 | |
| Nine thous and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO A#7-42007 | | |

11/13/2012    1307    $9,000.00

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001327 |
| DATE 11.1.12 | | |
| PAY TO THE ORDER OF George Markakis | $ 849.88 | |
| Eight hundred fourty nine and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO 3rd payment | | |

11/07/2012    1327    $849.88

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001328 |
| DATE 11.1.12 | | |
| PAY TO THE ORDER OF Arlene Pero | $ 2534.55 | |
| Two thousand five hundred thirty four and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO 3rd payment | | |

11/14/2012    1328    $2,534.55

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001329 |
| DATE 11.1.12 | | |
| PAY TO THE ORDER OF Raymond Owens | $ 1000.00 | |
| One thousand and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO 3rd payment | | |

11/09/2012    1329    $1,000.00

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001330 |
| DATE 11.1.12 | | |
| PAY TO THE ORDER OF American Express | $ 7808.97 | |
| Seven thousand eight hundred eight | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO #7-42007 | | |

11/05/2012    1330    $7,808.97

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001331 |
| DATE 11.1.12 | | |
| PAY TO THE ORDER OF Chase Card Services | $ 500.00 | |
| Five hundred and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO 4266841281816/25 | | |

11/02/2012    1331    $500.00

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001333 |
| DATE 11.6.12 | | |
| PAY TO THE ORDER OF American Express | $ 3000.00 | |
| Three thousand | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO | | |

11/13/2012    1333    $3,000.00

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001334 |
| DATE 11.7.12 | | |
| PAY TO THE ORDER OF Chuck Leeds | $ 851.00 | |
| Eight hundred fifty one and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO | | |

11/14/2012    1334    $851.00

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001336 |
| DATE 11.9.12 | | |
| PAY TO THE ORDER OF American Express | $ 1000.00 | |
| One thousand and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO 9-72000 | | |

11/16/2012    1336    $1,000.00

| | | |
|---|---|---|
| PRINCETON AVENUE GROUP INC.<br>1301 KINGHS HWY<br>SWEDESBORO NJ 08080 | | 001337 |
| DATE 11.12.12 | | |
| PAY TO THE ORDER OF Liberty Bell Bank | $ 2943.60 | |
| Two thousand nine hundred fourty three and | | DOLLARS |
| LIBERTY BELL BANK | | |
| MEMO Act 82002497 | | |

11/14/2012    1337    $2,943.60



Check: 1343 Amount: $2,534.55 Date: 12/14/2012
Run: 7030001, Batch: 1470002, Seq: 1, Source: Historical Data



Check: 1343 Amount: $2,534.55 Date: 12/14/2012
Run: 7030001, Batch: 1470002, Seq: 1, Source: Historical Data

645  215-219-0202

1374    2,534.55    Jan 2013

# MICHAEL K GORMAN CONSTRUCTION

**50 Webb Ave**
**Pitman**
**New Jersey**
**09071**
**856.308.8170**

27 January 2020

Princeton Avenue Group Inc.
1301 Kings Highway
Swedesboro
New Jersey
08085

**RE: Restoration Quote for the Apartment, The Red Hen**

| | | |
|---|---|---|
| 1. Insulation and 1x6 tongue and groove pine panelling - material cost | | $25,500.00 |
| | Tax | $  1,702.13 |
| | **Total** | **$27,202.13** |
| | | |
| 2. Labor for installation of insulation and 1x6 tongue and groove | | $27,200.00 |
| | Tax | $  1,815.60 |
| | **Total** | **$29,015.60** |
| | | |
| 3. Total Renovation Cost | | **$56,217.73** |

Regards,
Mike Gorman



January 21, 2020

1303 Kings Hwy.
Swedesboro, NJ 08085

RE: Apt Rental

Gus,

Once the apartment has been rehabbed the monthly rental will be from $1,900 - $2,000.

Sincerely,

Beth Sawyer
Owner/Broker

8

*Princeton Avenue Group*

*85003341*

## Appraisal One, Inc.

150 Cooper Road • Suite A-3 • West Berlin, NJ 08091
856-753-3030 • Fax 856-753-3046 • E-Mail: Officeappraisalone@gmail.com

- Appraisal Report -
**Restaurant Property**
**1301-1307 Kings Highway**
**Swedesboro Borough, Gloucester County, New Jersey 08085**
**Borrower: Princeton Avenue Group, Inc.**

Date of Report
January 5, 2018

Effective Date of the Appraisal
January 2, 2018 - As Is Market Value

Prepared for:

Ms. Brenda Maddock
Loan Administrator
Liberty Bell Bank
2099 Route 70 East
Cherry Hill NJ 08003

Prepared by:

Adam Frett, Sr., SCGREA
Appraiser
NJ State Certification #42RG00244400
Expiration: 12-31-2019

# Appraisal One, Inc.

150 Cooper Road • Suite A-3 • West Berlin, NJ 08091
856-753-3030 • Fax 856-753-3046 • E-Mail: Officeappraisalone@gmail.com

January 5, 2018

Ms. Brenda Maddock
Loan Administrator
Liberty Bell Bank
2099 Route 70 East
Cherry Hill NJ 08003

- Appraisal Report -
Restaurant Property
1301-1307 Kings Highway
Swedesboro Borough, Gloucester County, New Jersey 08085
Borrower: Princeton Avenue Group, Inc.

Dear Ms. Maddock:

In response to your request for an appraisal of the above captioned property, I am pleased to submit this report. This letter of transmittal and the value stated below cannot be understood in isolation but must be placed within the context of the analysis of the report. Adam Frett last inspected the subject property on January 2, 2018.

## AS IS MARKET VALUE
In my opinion, the As Is Market Value of the fee simple estate of the subject property (real property only), subject to the assumptions and limiting conditions set forth below and herein, as of January 2, 2018 is:

### SEVEN HUNDRED TEN THOUSAND DOLLARS
### $710,000

The value opinion in this report is qualified by certain assumptions, limiting conditions, certifications, and definitions. I particularly call your attention to the extraordinary assumptions and hypothetical conditions listed below:

## EXTRAORDINARY ASSUMPTIONS
*The asphalt shingle portion of roof is leaking and in need of replacement, and there is some damaged drywall from the roof leaks. Repair estimates were requested, but not provided. Lacking repair estimates, the cost to cure the aforementioned deferred maintenance is estimated to be $10,000, which has been considered in the valuation. Any variation from this assumption could affect the valuation results contained herein.*

## HYPOTHETICAL CONDITIONS
This appraisal does not employ any hypothetical conditions.

## GENERAL ASSUMPTIONS AND LIMITING CONDITIONS
Refer to addenda for a full list of general assumptions and limiting conditions.

USPAP 2014 2015 permits appraisal reports to be communicated as (1) an Appraisal Report or (2) a Restricted Appraisal Report. No longer will there be a Summary Appraisal Report or a Self-Contained Appraisal Report. This report is identified as an Appraisal Report. Furthermore, this Appraisal Report has been written in compliance with current 2016-2017 regulations.

Liberty Bell Bank
Ms. Brenda Maddock
January 5, 2018
Page 2 of 2

The Appraisal Foundation has adopted significant revisions to USPAP effective July 1, 2006. USPAP now identifies a minimum set of standards that apply in all appraisal, appraisal review and appraisal consulting assignments. The importance of problem identification and the scope of work determination in the appraisal process is emphasized in the new Scope of Work Rule. The appropriate scope of work (type and extent of research and analyses) continues to be based on what is required to produce credible assignment results.

Beginning in 2014, Standards Rules 2 2, 8 2, and 10 2 of the Uniform Standards of Professional Appraisal Practice (USPAP) offer two written appraisal report options, an Appraisal Report and Restricted Appraisal Report. An appraiser may communicate the results of the appraisal in one of two options: Appraisal Report (Standards Rules 2 2(a), 8 2(a), and 10 2(a)), or Restricted Appraisal Report (Standards Rules 2 2(b), 8 2(b), and 10 2(b)). The main differences between the two options are in three areas; 1) An Appraisal Report may have the client as the only intended user but may also have other intended users while a Restricted Appraisal Report must have the client as the only intended user. 2) In an Appraisal Report, specified parts of the research and development must be summarized; in a Restricted Appraisal Repot, those same parts need only be stated. 3) An Appraisal Report requires the appraiser to summarize the information analyzed and the reasoning that supports the analyses, opinions, and conclusions while a Restricted Appraisal Report does not have this requirement.

The estimate of "market value" is in accordance with the definition set forth by the Board of Governors of the Federal Reserve System, under Title XI of the Federal Financial Institutions Reform Recovery, and Enforcement Act of 1989 ("FIRREA"), effective August 9, 1990. Furthermore, this appraisal is being made in accordance with the appraisal guidelines and standards set forth by Liberty Bell Bank.

This letter is invalid as an opinion of value if detached from the report, which contains the text, exhibits, and Addenda.

I have performed no services, as an appraiser or in any other capacity regarding the property that is the subject of this report within the three year period immediately preceding acceptance of this assignment.

The descriptions and conclusions set forth in this appraisal are subject to the General Assumptions and Limiting Conditions which follow the Certificate of Appraisal. Thank you for the opportunity of being of service to you.

Sincerely,

**APPRAISAL ONE, INC.**

Adam Frett, Sr., SCGREA
Appraiser
NJ State Certification #42RG00244400
Expiration: 12-31-2019

Appraisal One, Inc.                    1301-1307 Kings Highway, Swedesboro Borough, Gloucester County, New Jersey

## TABLE OF CONTENTS

SUMMARY OF SALIENT FACTS .......................................................................................20

SCOPE OF WORK ....................................................................................................21

PROPERTY RIGHTS APPRAISED ....................................................................................22

INTENDED USER/USE ................................................................................................23

DEFINITION OF "MARKET VALUE" ...................................................................................24

AREA DATA .........................................................................................................25

MARKETING TIME/EXPOSURE TIME ...................................................................................28

SUBJECT PROPERTY .................................................................................................29

ASSESSMENT AND TAX INFORMATION .................................................................................37

ZONING ...........................................................................................................38

HIGHEST AND BEST USE ANALYSIS ...................................................................................41

THE APPRAISAL PROCESS ............................................................................................45

SALES COMPARISON APPROACH ........................................................................................46

CONCLUSION .......................................................................................................59

CERTIFICATION STATEMENT ..........................................................................................60

GENERAL ASSUMPTIONS AND LIMITING CONDITIONS ....................................................................61

DEFINITIONS OF SOME COMMON APPRAISAL TERMINOLOGY ...............................................................63

ADDENDA ..........................................................................................................66